IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELODY F. ANDERSON,

             Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner of Social Security

             Defendant.

Case No. 6:15-cv-01627-SI

OPINION AND ORDER

Karen Stolzberg, 11830 S.W. Kerr Parkway, Suite 315, Lake Oswego, OR 97035.
Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States
Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue,
Suite 600, Portland, OR 97204-2902; Michael Howard, Special Assistant United States Attorney,
OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue,
Suite 2900 M/S 221A, Seattle, WA 98104-7075.
Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Plaintiff, Mrs. Melody F. Anderson, seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") finding that Plaintiff had

medically improved as of January 1, 2012, resulting in the termination of Plaintiff's Disability

Insurance Benefits ("DIB"). For the following reasons, the Commissioner's decision is

REVERSED and the case is REMANDED for further proceedings consistent with the

instructions herein.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for DIB on September 14, 2006, alleging disability beginning on May 31, 2006. AR 93, 99. She alleged disability due to fibromyalgia, bipolar disorder, and anxiety disorder. AR 118. Initially, the Commissioner denied Mrs.

Anderson's application, and she requested a hearing for reconsideration before an Administrative Law Judge ("ALJ"). AR 118, 122-125, 127. In a decision dated June 11, 2008, which is the comparison point decision ("CPD") under the Social Security regulations, the ALJ ("CPD-ALJ") determined that a hearing was unnecessary because the record evidence supported a finding of disability beginning on May 31, 2006. AR 99-105. The ALJ also noted that Plaintiff's disability was likely to improve with appropriate treatment, and recommended a continuing disability review in 24 months. AR 105.

Upon subsequent review, the Commissioner found that Plaintiff's impairments improved enough after the CPD for her to be able to return to work, and that she was no longer disabled as of January 2012. AR 152-154. In response, Plaintiff requested reconsideration before a Disability Hearing Officer ("DHO"). AR 156-57. The DHO held a hearing on July 16, 2012, and in a decision dated July 25, 2012, upheld the determination of Plaintiff's medical improvement relating to her ability to work, finding her "not disabled." AR 166-188. Plaintiff appealed the DHO's decision, and requested a hearing before an ALJ. AR 189.

An administrative hearing was held on November 20, 2013. AR 44-87. In a decision dated December 23, 2013, the ALJ found Plaintiff's medical impairments had improved after the CPD such that she was no longer disabled as of January 1, 2012. AR 23-36. After considering Plaintiff's stated reasons for disagreeing with the ALJ's decision, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-4. Plaintiff now seeks judicial review of that decision.

**B.  The Sequential Analysis**

In order to determine whether a claimant's disability is continuing or has ceased, and, therefore, whether the claimant is still entitled to disability benefits, an eight-step process is followed. *See Griego v. Sullivan,* 940 F.2d 942, 944 n.1 (5th Cir. 1991); *Aikens v. Shalala,* 956

F.Supp. 14, 16 & n.2 (D.D.C. 1997). At step one, the issue is whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, claimant's disability is deemed to have ceased and benefits are terminated. *Id.*

At step two, the issue is whether claimant's impairment meets or equals the impairments set out in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, benefits continue. 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i). If not, the analysis continues. At step three, the issue is whether there has been any medical improvement since the original determination of disability. If there has been medical improvement, as shown by a decrease in medical severity, the ALJ proceeds to step four. Otherwise, and absent medical improvement, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii).

At step four, the ALJ must determine whether a medical improvement is related to the claimant's ability to work, *i.e.,* whether there has been an increase in her residual functioning capacity ("RFC"). If so, the ALJ proceeds to step six. Otherwise, and absent an ability to perform work (as with an absence of medical improvement), the ALJ proceeds to step five. 20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii).

Step five applies in either of the following situations: if there has been no medical improvement or if the improvement is unrelated to the claimant's ability to work. 20 C.F.R. §§ 404.1594(f)(3) and (4), 416.994(b)(5)(ii) and (iii). At step five, the ALJ determines whether any of the two groups of exceptions to the medical improvement standard of review apply. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv). If no exceptions apply, the claimant's disability continues. If the first group of exceptions apply, the ALJ proceeds to step six, and if the second group of exceptions apply, the claimant's disability is terminated. *Id.*

If the claimant's medical improvement is related to her ability to work or if one of the relevant step five exceptions applies, the ALJ proceeds to step six. At step six, the ALJ determines whether the claimant's impairments are sufficiently severe so as to limit her physical or mental abilities to do basic work activities. If they are not sufficiently severe, disability is terminated. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v). If the claimant's impairments are sufficiently severe then, at step seven, the ALJ assesses the claimant's current RFC to determine whether she can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi). Once again, if she can perform past work, disability terminates. Otherwise, the ALJ proceeds to step eight. *Id.*

Finally, at step eight, reached if the claimant cannot perform past work, the ALJ considers whether, given the claimant's age, education, past work experience, and RFC, the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii). If so, disability terminates. Otherwise, benefits continue. *Id.*

**C.  The ALJ's Decision**

The ALJ began his opinion by noting that Plaintiff's representative requested him to subpoena Plaintiff's counselor, Ms. Laila Ayyoub Cusick, LCSW, to give testimony at a hearing. AR 23. The ALJ determined that Plaintiff did not demonstrate a substantial need for Ms. Cusick's testimony that warranted the issuance of a subpoena. AR 23. The ALJ then applied the sequential analysis. AR 23-36.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity through January 1, 2012, the date the ALJ determined Plaintiff's disability ended. AR 25. At step two, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of impairments listed in the regulations. *Id*. At step three, the ALJ found Plaintiff experienced medical improvement since the CPD; and, at step four

he noted that the improvement was related to her ability to work—rendering step five

inapplicable. AR 26-27.

At step six, the ALJ found that Plaintiff's impairments of bipolar disorder, anxiety

disorder, history of obesity status post bariatric surgery, and fibromyalgia were severe

impairments that cause more than minimal functional limitations. AR 27-28. The ALJ also found

at step four that Plaintiff's additional complaints of sleep apnea, urinary incontinence, hand

tremors, and Attention Deficit Disorder did not constitute severe medically determinable

impairments because they present only transient and mild limitations or are well controlled with

treatment. *Id*.

At step seven, the ALJ found that as of January 2012, Plaintiff had the RFC to perform

modified light work. AR 28. The additional limitations found by the ALJ were that Plaintiff:

(1) should avoid hazardous working conditions including working at heights or around

dangerous machinery with moving parts; (2) can remember simple and routine instructions and

procedures, but might have difficulty sustaining work with more complex instructions and

procedures; (3) can sustain attention for simple and routine tasks, but would be unlikely to

sustain attention for more complex tasks; (4) should not be required to work with the public on

more than a very infrequent basis; (5) can engage in brief and normal interactions with

coworkers and supervisors; and (6) would work best in a predictable work environment that does

not require her to perform executive or high-level decision-making. AR 28-35. In reaching this

conclusion, the ALJ considered Plaintiff's testimony, but found it was not fully credible. AR 28.

Additionally, the ALJ considered the medical report of examining psychologist, Dr. Leslie

Carter, giving her opinion limited weight. AR 34. The ALJ also found Plaintiff's counselor,

Ms. Cusick's February 2013 statement regarding Plaintiff's ability to work unpersuasive. *Id*. The

ALJ gave great weight to the opinions of the state agency reviewing psychologists, and some weight to the state agency medical consultants. AR 34-35.

In carrying out the remainder of step seven, the ALJ found Plaintiff was unable to perform her past relevant work as a pharmacy technician because that position entails a narrow margin for error and contact with the public. AR 35. At step eight, the ALJ found—with the assistance of a vocational expert ("VE") who testified at the hearing—that considering Plaintiff's age, education, work experience, and RFC, she was able to perform a significant number of jobs existing in the national economy. AR 35-36. Based on this finding, the ALJ concluded that Plaintiff's disability ended on January 1, 2012. AR 36.

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that her disability ended as of January 1, 2012. Plaintiff argues that the ALJ erred in making that determination by: (1) failing to develop the record by not issuing a subpoena for the testimony of mental health counselor, Ms. Cusick; (2) improperly rejecting Ms. Cusick's statement regarding Plaintiff's ability to function in the workplace; (3) improperly limiting the weight given to examining psychologist, Dr. Carter's report; (4) improperly finding that Plaintiff's impairments, either individually or in combination with one another, do not meet or equal the severity of an impairment listed in the regulations; (5) improperly finding Plaintiff's subjective symptom testimony less than fully credible; (6) improperly finding that Plaintiff's medical improvement was related to her ability to work; (7) failing to take into account Plaintiff's age and the time she has been out of the workforce when determining her RFC; and (8) presenting an inadequate hypothetical to the VE to determine if Plaintiff was able to perform a significant number of jobs existing in the national economy. Plaintiff urges the Court to remand for an immediate award of benefits.

## A.  Record Development

Plaintiff argues that the ALJ erred by not issuing a subpoena for the testimony of Ms. Cusick. Plaintiff made the request on the day of her hearing, November 20, 2013.[1] The reason for the request was because Ms. Cusick refused to sign a letter drafted by Plaintiff's attorney that purported to summarize a conversation they had concerning Plaintiff's treatment history with Ms. Cusick. In making this request, Plaintiff's attorney stated that issuance of the subpoena would likely encourage Ms. Cusick to sign the letter. AR 50.

A claimant requesting a subpoena must "state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2). A claimant is entitled to "such cross-examination as may be required for a full and true disclosure of the facts." *See Solis v. Schweiker,* 719 F.2d 301, 302 (9th Cir. 1983) (quoting 5 U.S.C. § 556(d)). The ALJ has discretion to decide when cross-examination is warranted. *Copeland v. Bowen,* 861 F.2d 536, 539 (9th Cir. 1988). Here, Plaintiff was not denied the opportunity to cross-examine a witness whose findings contradicted medical evidence that was favorable to her. *See Solis,* 719 F.2d at 302 (finding that it was an abuse of discretion to deny the claimant's request to cross-examine a state agency physician who rendered an adverse medical opinion where the physician's report was crucial to the ALJ's decision). Instead, Plaintiff argues that Ms. Cusick's testimony would support Plaintiff's claim, "rendering [her] argument that cross-examination was necessary less compelling." *Scott v. Astrue*, 2010 WL 2292983, at *9 (D. Ariz. June 8, 2010).

The ALJ denied Plaintiff's subpoena request because Ms. Cusick's treatment records

---

[1] The Court notes the regulations require that a request for the issuance of a subpoena be filed with the Social Security Administration at least five days before the date of the hearing. 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2). Here, Plaintiff made her request at the beginning of the hearing. The ALJ, however, did not deny the request as untimely.

were already part of the record, and Plaintiff failed to demonstrate a substantial need for Ms. Cusick's appearance. In other words, because Ms. Cusick's extensive treatment history with Plaintiff was in the record, Plaintiff failed to demonstrate that Ms. Cusick's testimony was either essential or unobtainable by other means. Moreover, the ALJ noted that Ms. Cusick informed Plaintiff's counsel by email that Ms. Cusick was not qualified to assess Plaintiff's need for disability benefits or judge her ability to function at work.[2] For these reasons, the ALJ did not err in denying Plaintiff's request for a subpoena. *See, e.g.*, *Deguzman v. Astrue*, 2013 WL 308819, at *2 (W.D. Wash. Jan. 7, 2013), *report and recommendation adopted*, 2013 WL 308959 (W.D. Wash. Jan. 25, 2013); *Graham v. Astrue*, 2011 WL 1671804, at *4 n.6 (C.D. Cal. Apr. 29, 2011); *Scott*, 2010 WL 2292983, at *9.

## B. The Medical Testimony

Plaintiff argues that the ALJ improperly evaluated the medical testimony of her treating mental health therapist, Ms. Cusick, and her examining psychologist, Dr. Carter. Each is discussed in turn.

### 1. Ms. Cusick

Plaintiff asserts the ALJ failed to give specific, clear, and convincing reasons for rejecting the opinion of Plaintiff's mental health therapist, Ms. Cusick. Specifically, Plaintiff asserts that the ALJ committed legal error when he rejected Ms. Cusick's opinion that "[i]t is difficult to imagine [Plaintiff] being able to tolerate the demands of a workplace yet . . . ." AR 935. The ALJ disregarded Ms. Cusick's opinion because, although she may provide insight into the Plaintiff's impairments and how they affect her ability to work, she is not an acceptable

---

[2] In a reply email to Plaintiff's counsel, Ms. Cusick wrote, "The letter [drafted by Plaintiff's attorney] comes to some conclusions about whether I think Melody can function at work. I was pretty careful to avoid giving an opinion about that when we spoke, because I'm not trained or qualified to assess fitness for work." AR 390.

medical source that is able to provide medical opinions in the record. AR 34; *see also* 20 CFR §§ 404.1513(d)(1), 404.1527(a)(2), 416.927(a)(2); SSR 06-03p, *available at* 2006 WL 2329939 (Aug. 9, 2006). Additionally, the ALJ noted Ms. Cusick's admission that she is not qualified to provide an assessment regarding Plaintiff's fitness for work. AR 23, 34, 390.

### a.   Standard for evaluating Ms. Cusick's testimony

As a preliminary matter, Plaintiff misstates the proper legal standard the ALJ was required to apply in order to discount Ms. Cusick's opinion. SSR 06-03p defines "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p. Because Ms. Cusick is a licensed clinical social worker, she is considered an "other" medical source. *See* SSR 06-03p (noting that medical sources who are not "acceptable medical sources" include licensed clinical social workers); *see also Fernandez v. Barnhart*, 68 F. App'x 820, 821 (9th Cir. 2003) ("As a therapist without a doctorate, [mental health therapist] does not meet the regulations' requirements for an 'acceptable medical source.'").

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r*

*of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not

"discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the

ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to

those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also

may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639,

642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony,

either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d

at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other

testimony that the ALJ validly discounted, or where the testimony is contradicted by more

reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's

failure to comment upon lay witness testimony is harmless where 'the same evidence that the

ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'"

*Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ

ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition,

"a reviewing court cannot consider the error harmless unless it can confidently conclude that no

reasonable ALJ, when fully crediting the testimony, could have reached a different disability

determination." *Stout*, 454 F.3d at 1056.

In considering how much weight to give "other" medical source opinion evidence, the

ALJ should consider: (1) "how long the source has known and how frequently the source has

seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to

which the source presents relevant evidence to support an opinion"; (4) "how well the source

explains the opinion"; (5) "whether the source has a specialty or are of expertise related to the

individual's impairment(s)"; and (6) "any other factors that tend to support or refute the

opinion." SSR 06-03p. The fact that a source is an "acceptable medical source" sometimes

entitles that source's opinions to more weight than the opinions from other medical sources. *Id.*

Nonetheless, in certain instances, after applying the factors for weighing opinion evidence, an

ALJ may properly find that an opinion from a medical source who is not an "acceptable medical

source" outweighs the opinion of the "acceptable medical source":

> For example, it may be appropriate to give more weight to the
> opinion of a medical source who is not an acceptable medical
> source if he or she has seen the individual more often than the
> treating source and has provided better supporting evidence and a
> better explanation for his or her opinion. [3]

*Id.*

Plaintiff asserts that Ms. Cusick's opinion should have been given the same weight as an

"acceptable medical source" because her treatment of Plaintiff was overseen by Dr. Eun Park.

Plaintiff cites to *Benton ex rel. Benton v. Barnhart* for the proposition that a mental health

therapist who is overseen by a psychiatrist as part of a team approach to treatment should be

accorded "acceptable medical source" status. 331 F.3d 1030 (9th Cir. 2003). Thus, Plaintiff

argues, Ms. Cusick's opinion should have been entitled to substantial, if not controlling, weight.

*Benton*, however, dealt with whether the medical opinion of a psychiatrist that had only seen the

plaintiff once, but was overseeing her team of therapists, should have been considered a "treating

source," rather than an "examining source."[4] *Id.* at 1035-1041. Furthermore, Dr. Park never

---

[3] Giving more weight to the opinion of a non-acceptable medical source over a treating medical source does not violate the treating source rules under 20 C.F.R. § 404.1527(d)(2).

[4] A treating source is an "acceptable medical source" that provides a patient with medical treatment in an ongoing relationship. 20 C.F.R. § 404.1502. An examining source, or nontreating source, is an acceptable medical source that has examined a patient in person but does not have an ongoing relationship with the patient. *Id.* Generally, the opinions of a treating source are given more weight than those of an examining source. *Holohan*, 246 F.3d 1195, 1202 (9th Cir. 2001).

adopted Ms. Cusick's opinion on Plaintiff's ability to return to work in Dr. Park's own reports. Thus, the Court considers Ms. Cusick as an "other" medical source.

### b. The ALJ's evaluation of Ms. Cusick's testimony

The ALJ discounted Ms. Cusick's statement that she did not believe Plaintiff could return to work because Ms. Cusick was not an acceptable medical source. This is not a germane reason to discount other medical source testimony. *See, e.g.*, *Haagenson v. Colvin*, 2016 WL 3910628, at *2 (9th Cir. July 19, 2016) ("The ALJ also failed to provide germane reasons for rejecting the opinions of Haagenson's nurse and counselor, who constitute 'other sources' that can provide evidence about the severity of Haagenson's impairments and how they affect her ability to work. The only reason that the ALJ offered for rejecting their opinions is that they are not 'acceptable medical sources' within the meaning of the federal regulation. However, the regulation already presumes that nurses and counselors are non-acceptable medical sources, yet still requires the ALJ to consider them as 'other sources.'").

The second reason provided by the ALJ for discounting Ms. Cusick's statement regarding Plaintiff's ability to function in the workplace is that Ms. Cusick herself acknowledged that she is not qualified to give opinions pertaining to Plaintiff's ability to work. AR 390. This reason was sufficiently germane to disregard Ms. Cusick's statement. Moreover, the ALJ also took into consideration the length, nature, and extent of Ms. Cusick's treatment relationship with Plaintiff, as evidenced by the ALJ's consistent reference to Ms. Cusick's treatment records throughout the ALJ's analysis. AR 23-36.

### 2. Dr. Carter

Plaintiff next argues the ALJ erred in giving Dr. Carter's report limited weight. Dr. Carter was an examining psychologist who also reviewed Plaintiff's medical records. Plaintiff contends

that Dr. Carter's report should be credited as true, and an award of immediate benefits should be granted.

Dr. Carter's opinions were contradicted by the opinions of the state agency reviewing psychologists and the ALJ rejected Dr. Carter's opinion in favor of the opinion state agency consultants. Thus, the ALJ needed to provide "specific, legitimate reasons" for discrediting Dr. Carter's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see also Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995) (noting that an ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence").

The ALJ gave Dr. Carter's report limited weight because: (1) she "seems to find a large part of the claimant's 'disability' on physical conditions, which are outside her area of expertise"; (2) her report "appears to be little more than a records review, not an evaluation"; and (3) Dr. Carter's report was generated in "an effort to generate evidence for the current appeal." AR 34. Each is discussed in turn.

First, Dr. Carter is a licensed psychologist with a Ph.D.; Dr. Carter is not a medical doctor. AR 919. The ALJ was correct in noting that some of Dr. Carter's clinical opinion related to Plaintiff's physical impairments, and is thus entitled to less weight. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The ALJ, however, failed to take into account that much of Dr. Carter's opinion was also grounded in her area of expertise—Plaintiff's psychological impairments. For example, Dr. Carter stated, "[t]he panic episodes make her socially inappropriate and lead to episodes of

decompensation for which the recovery period may be several hours," and, "[s]he continues . . . to get triggered, become tearful and panicky several times a week." AR 923-924. As such, the ALJ's reason is only applicable for limiting the weight given to Dr. Carter's statements on Plaintiff's *physical* impairments, but this same reasoning does not extend to Dr. Carter's conclusions regarding Plaintiff's *psychological* condition. Yet the ALJ improperly discounted precisely those types of opinions.

Second, the ALJ noted that he believed Dr. Carter conducted little more than a records review. Dr. Carter, however, did not merely engage in a records review. Dr. Carter conducted a diagnostic interview with both Plaintiff and her husband. AR 919. Dr. Carter also administered to Plaintiff the Millon Clinical Multiaxial Inventory-III test to produce a mental health profile. AR 922. Moreover, the ALJ's reasoning is inconsistent with him later giving "great weight" to the opinions of the State agency psychological consultants, who never examined Plaintiff and who conducted nothing more than a records review. *Lester*, 81 F.3d at 832 (holding that an ALJ discounting an examining psychologist's opinion because it was based on "limited observation" of the claimant "would be a reason to give less weight to [the psychologist's] opinion than to the opinion of a treating physician, [however,] it is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant" (emphasis in original)).

Third, the ALJ also took into consideration that Dr. Carter's report was generated to assist Plaintiff in producing evidence for her disability hearing. He noted that although Dr. Carter's report is "certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored." AR 34. As conceded by the Commissioner, this was not a sufficient reason, standing alone, to reject Dr. Carter's opinion. *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (stating "in the absence of other evidence to undermine the credibility of

a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it"). As already discussed, the ALJ's reasons for limiting the weight given to Dr. Carter's *psychological* assessment of Plaintiff's impairments were not specific and legitimate. Therefore, the fact that Dr. Carter's report was obtained in anticipation of the disability hearing is insufficient, without more, to discredit Dr. Carter's report.[5] As such, the ALJ erred by improperly discounting the relevant opinions of Dr. Carter contained in her report. Plaintiff argues that because the ALJ committed legal error, this Court should credit Dr. Carter's report as true and issue an immediate award of benefits. The applicability of the "credit-as-true" doctrine is discussed below.

## C.  The Listings

Plaintiff asserts that the ALJ erred in finding that Plaintiff did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing"). Additionally, Plaintiff contends that the ALJ should have obtained in updated expert medical report to help determine if her impairments in combination were equal to a Listing.

### 1.  Meeting or Equaling a Listing

According to Plaintiff, had the ALJ accepted Dr. Carter's report, he would have found that Plaintiff meets the requirements of Listings 12.04-Affective Disorders and 12.06-Anxiety

---

[5] The Commissioner argues that Dr. Carter's findings were inconsistent with the treatment record as a whole. The ALJ, however, did not invoke this as a reason to discount Dr. Carter's opinions. By contrast, in discussing the opinions of the State agency psychological consultants, the ALJ stated that their findings were supported by the fact that Plaintiff "was now able to leave her home, travel and attend group sessions," and that the state agency consultants' opinions "are consistent with the record as a whole." AR 34. The Court may not invoke grounds to uphold the decision of an ALJ that were not originally invoked by the ALJ. *See Bray*, 554 F.3d at 1226; *Orn*, 495 F.3d at 630; *Pinto v. Massarani*, 249 F.3d 840, 847 (9th Cir. 2001).

Related Disorders. In evaluating the "B" criteria of Listings 12.04 and 12.06,[6] the ALJ found that Plaintiff has mild restrictions in her activities of daily living. AR 26. He further noted moderate difficulties in her social functioning, as well as moderate restrictions with regard to concentration, persistence, and pace. *Id*. The ALJ also found that Plaintiff has experienced no episodes of decompensation of extended duration. *Id*.

The ALJ's findings essentially adopt the findings from the Psychiatric Review Technique Form ("PRTF") completed by Dr. Joshua J. Boyd, a non-treating, non-examining State agency consultant. AR 736-49. The ALJ gave Dr. Boyd's opinion "great weight." AR 34. The ALJ's findings also find some support in the medical records completed by Plaintiff's treating physicians and therapists. AR 28-35; *See, e.g.*, AR 677 (Plaintiff swimming with mother and friend, but relies on husband to do the shopping due to mild agoraphobia), AR 854-855 (Plaintiff attending group therapy, walking dogs, and appears alert and well groomed). As Plaintiff notes, however, there is also evidence in the record that Plaintiff had continued anxiety and panic attacks and generally only left the house with supportive family members. Because Dr. Carter's opinions were not properly assessed in light of the record as a whole and ambiguities exist in the record (as discussed further below), it is not appropriate for the Court to accept Dr. Carter's conclusion that Plaintiff has marked limitations and thus that the ALJ's Listing analysis was in error. Accordingly, the Commissioner should resolve this uncertainty on remand.

Plaintiff also claims that the ALJ failed to make specific findings regarding

_____

[6] Listings 12.04 and 12.06 share identical paragraph "B" criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1. In order to meet the "B" criteria, the claimant must demonstrate two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id*. A claimant may meet Listings 12.04 and 12.06 by satisfying the paragraph "A" criteria and either the paragraph "B" or "C" criteria. *Id*. That Plaintiff meets the "A" criteria for both Listing 12.04 and 12.06 is undisputed.

Listing 12.04's paragraph "C" criteria.[7] The ALJ considered this "C" criteria. The ALJ found that none of the requirements were satisfied by Plaintiff's impairments. AR 26. Similar to the "B" criteria, Dr. Carter's report, when given due consideration, may impact the "C" criteria analysis. Therefore, the ALJ should also revisit this determination on remand.

In the alternative, Plaintiff argues that even if her mental impairments fail to meet the criteria for Listings 12.04 and 12.06 individually, they, in combination with her fibromyalgia, obesity, urinary incontinence, and other physical impairments should have been found equal in severity to a Listing. *See* 20 C.F.R. §§ 404.1526, 416.926. The ALJ not only considered Plaintiff's impairments individually, but also in combination with one another, finding that the impact of these additional impairments did not cause limitations that equal the criteria for any listed impairment set forth in the regulations. Given that the additional impairments raised in Plaintiff's argument are physical in nature, Dr. Carter's report will likely have no bearing on the ALJ's determination concerning medical equivalence in the further proceedings. The ALJ's conclusion was a rational reading of the evidence found in the record; as such, this Court must uphold that determination. *Burch*, 400 F.3d at 679.

## 2. Updated Expert Medical Opinion

Finally, Plaintiff asserts that SSR 96-6p directs an ALJ "to obtain an expert opinion as to medical equivalence when the symptoms, signs and laboratory findings reported in the case record suggest that a judgment of equivalence may be *reasonable*." ECF 17 at 16 (emphasis in

---

[7] Under Listing 12.04, if a claimant meets both paragraph "A" and "C" criteria, it is dispositive of a finding of disability. The Paragraph "C" criteria are: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or (3) current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

original). Plaintiff charges the ALJ with legal error for failing adequately to evaluate the medical equivalence issue, and for failing to obtain an updated expert medical opinion.

According to the SSR, "[t]he signature of a State agency medical or psychological consultant on an . . . SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) [form] ensures that consideration . . . has been given to the question of medical equivalence," and, "the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained . . . ." SSR 96-6p, *available at* 1996 WL 374180 (July 2, 1996). The pertinent part of the next paragraph reads, "[w]hen an administrative law judge . . . finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant." *Id*.

Plaintiff's record contains two signed SSA-833-U5 (Cessation of Disability Transmittal) forms. AR 106, 107. Additionally, as previously discussed, Dr. Boyd's completed PRTF was reviewed by the ALJ in making his determination. AR 736-749. These forms illustrate that, consistent with the SSR and regulations, the ALJ adequately considered the question of medical equivalence. SSR 96-6p; *see also* 20 C.F.R. §§ 404.1526, 416.926. Furthermore, SSR 96-6p directs an ALJ to obtain an updated expert medical opinion when in "the *opinion* of the administrative law judge . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable." (emphasis added). It is a reasonable inference that after the ALJ considered Plaintiff's impairments in combination with one another, the ALJ was not of the opinion that equivalence was reasonable. Therefore, it was within the ALJ's discretion not to obtain an updated expert medical opinion. *Harris v.*

*Colvin*, 584 F. App'x 526, 528 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1856, 191 L. Ed. 2d 735 (2015).

**D.  Plaintiff's Credibility**

Plaintiff challenges the ALJ's adverse credibility finding regarding Plaintiff's symptom testimony. Specifically, Plaintiff argues that the CPD-ALJ found Plaintiff credible, whereas the most recent ALJ found her less than credible to the extent that "[t]he medical evidence does not support the severity of the claimant's alleged symptoms." AR 29. According to Plaintiff, nothing has changed with respect to Plaintiff's testimony that warrants the current ALJ's departure from the credibility determination made by the CPD-ALJ. Furthermore, Plaintiff asserts the ALJ failed to provide "clear and convincing" reasons for rejecting her testimony. *Lester*, 81 F.3d at 834.

**1.  Standards for Evaluating a Claimant's Testimony**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical

source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.[8]

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. The ALJ's Analysis

The CPD was issued on June 11, 2008, and the hearing conducted before the decision currently on appeal occurred on November 20, 2013. Plaintiff argues that the CPD-ALJ found Plaintiff credible because she "complied with medical advice, and there was no evidence that she was malingering, and because she was motivated for treatment and complied with explicit treatment goals"; and, because these reasons "have not been disturbed by anything in this record," the ALJ had no basis for finding Plaintiff less than credible. ECF 17 at 17-18.

Plaintiff's argument misunderstands the ALJ's findings. While Plaintiff's willingness to comply with the directions of her medical providers has remained constant, the ALJ did not discount Plaintiff's testimony for failing to follow prescribed medical treatment. The heart of the

_____

[8] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, *available at* 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's December 2013 decision was issued before SSR 16-3p became effective and there is not yet any binding authority interpreting this new ruling, including whether it applies retroactively. *Compare Ashlock v. Colvin*, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), *with Lockn'ood v. Colvin*, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue.

ALJ's determination, after reviewing hundreds of pages of additional records by Plaintiff's medical providers, is that the medical record as a whole does not support the limitations alleged by Plaintiff. This is the ALJ's role. *See* SSR 16-3p. The fact that, five years before the hearing on Plaintiff's purported medical improvement, the CPD-ALJ considered without even holding a hearing that the medical evidence as whole supported Plaintiff's alleged limitations is not dispositive as to whether the record now supports the same finding.

    In undertaking the two-step credibility analysis, the ALJ found that Plaintiff presented objective medical evidence that could reasonably be expected to produce her alleged symptoms—satisfying step one. In moving to step two, the ALJ found no evidence of malingering; however, he found Plaintiff's symptom testimony inconsistent with the medical evidence and her activities of daily living. In doing so, the ALJ provided sufficiently specific, clear, and convincing reasons for finding the Plaintiff's symptom testimony less than credible.

### a. Inconsistencies with the Medical Evidence

    During the hearing, Plaintiff's attorney began questioning Plaintiff in the present tense, and the ALJ asked Plaintiff to limit her symptom testimony to the time period between the 2008 CPD and December 31, 2011—the date Plaintiff was last insured for disability benefit purposes. AR 51, 57-58. In considering that testimony, the ALJ noted that Plaintiff "has not reported to her treatment providers, symptoms to the level of severity as she now alleges." AR 29. Specifically, Plaintiff testified at the hearing that her impairments leave her in a state of constant anxiety, and she is almost always weepy or crying. AR 70-71. The ALJ noted, however, that her medical providers reported that her mood was largely stabilized with her current medications. AR 29-30, 672-73, 677-78. Plaintiff also reported being in a positive mood to her mental health providers on most occasions. *See, e.g.*, AR 698, 717, 721. She was also noted to be thinking clearly,

appropriately dressed, and well groomed at her medical appointments, unlike at her appointments during the time period adjudicated in the CPD. AR 687, 717.

The ALJ found that Plaintiff does have periods of increased symptoms, however, these incidences were situational in nature and corresponded with stressful life events—the death of her mother, undertaking a new therapy program that required reprocessing of past traumatic events, her parolee stepson moving in, reapplying for disability benefits, and being disappointed with the results of surgery performed to solve her urinary incontinence. AR 29-30, 765, 771, 894, 977, 979. Additionally, Plaintiff's periods of increased symptoms have not required emergency room treatment or psychiatric hospitalization, as they had in the past. AR 30.

Plaintiff also testified to having nightmare-induced panic attacks between once a week and once every two weeks. AR 57-58. The ALJ noted that although Plaintiff reported panic attacks to her medical providers, she did not report them with the frequency alleged at the hearing. AR 29, 672, 683. For example, Plaintiff's treatment records from February 2010 to January 2012—the only available medical evidence in the record between the CPD and Plaintiff's date last insured—show that Plaintiff reported a total of three panic attacks over the course of nearly two years. AR 672. Two of these attacks were reported on February 2, 2010, which, based on the record, was seemingly Plaintiff's first medical appointment since April 11, 2007. Thus, the first two reported panic attacks could have been relating back to an earlier time period. Except for the third panic attack reported in December 2010, Plaintiff did not mention any other panic episodes during her frequent contact with medical providers until after Plaintiff's disability benefits were terminated in January 2012. The ALJ correctly noted that the frequency of panic attacks alleged by Plaintiff at the hearing did not correspond with the contemporaneous reports she gave to her mental health providers before her date last insured.

PAGE 24 – OPINION AND ORDER

Additionally, Plaintiff alleged that she suffers from PTSD-related nightmares nearly every night of the week. AR 59. The record shows, however, that Plaintiff did not report experiencing nightmares to her medical providers during the time period between the CPD and the expiration of Plaintiff's disability insurance. To the contrary, the ALJ noted that Plaintiff specifically denied having nightmares during a sleep-study she underwent in May 2011, which Plaintiff reported was a normal and typical night's sleep for her. AR 30, 689. In the same sleep-study, however, Plaintiff did report that her sleep is disturbed approximately three nights a week by heartburn—evidencing that she was capable of informing her health care providers of incidences that affect her sleep. AR 689. Similar to Plaintiff's panic attacks, she did not begin reporting nightmares to her mental health providers until February 2012, after her disability benefits ceased due to the Commissioner's finding of medical improvement, and after her date last insured. AR 854-55.

For the reasons discussed, the inconsistencies between Plaintiff's symptom testimony and her medical reports were sufficiently specific, clear, and convincing reasons for finding her alleged limitations not supported by the record. *Lingenfelter*, 504 F.3d at 1036; *McCawley v. Astrue*, 423 F. App'x 687, 689 (9th Cir. 2011).

### b.  Inconsistencies with Activities of Daily Living

The ALJ also found that Plaintiff's described daily activities were "not limited to the extent one would expect, given her complaints of disabling symptoms and limitations." AR 32. Daily activities can support the discounting of a claimant's alleged limitations when the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 614 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. In evaluating a claimant's purported limitations, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's

activities 'contradict claims of a totally debilitating impairment.'" *Whittenberg v. Astrue*, 2012 WL 3922151 at * 4 (D. Or. Aug. 20, 2012) (quoting *Molina*, 614 F.3d at 1113); *see also Denton v. Astrue*, 2012 WL 4210508 at * 6 (D. Or. Sept. 19, 2012) ("While [claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations."). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to reject testimony regarding limitations. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility). Furthermore, the ALJ must make "specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 494 F.3d at 639.

Plaintiff testified that due to her mental impairments she is largely homebound. AR 68-69. The ALJ, however, found that her reports of swimming at the YMCA with her late-mother and friend; attending and actively participating in group therapy and bariatric sessions; walking for exercise six to seven times per week; and taking her dogs on daily walks did not amount to the degree of self-isolation alleged at the hearing. AR 32-33. These findings by the ALJ are supported by substantial evidence in the record. *See* AR 672, 677, 681-82, 684, 686, 921.

The ALJ further noted that Plaintiff was taking her daughter out job hunting; arriving to several of her medical appointments on her scooter; taking scooter rides for up to two hours; caring for her garden; researching bariatrics on her computer; and going on a weekend trip to Crater Lake. AR 32-33. Again, these findings are supported by substantial evidence in the

record. *See* AR 683, 698, 717, 764, 774, 921. The ALJ also noted that in April 2013, Plaintiff

reported to Ms. Cusick that since her bariatric surgery "she has more energy than she knows

what to do with," and "stays busy doing things all day." AR 961.

      The ALJ's analysis, however, was not flawless. Namely, the ALJ found that in

January 2010, Plaintiff reported going to the grocery store and a movie theatre, which the ALJ

cited as an activity of daily living that contradicted Plaintiff's testimony of disabling limitations.

AR 32, 672. The medical record cited to by the ALJ indicates that while Plaintiff did state that

she went to a grocery store and a movie theatre, she further reported that she experienced a panic

attack while at those places. AR 672. Thus, the ALJ's reliance on these outings as a basis for

discounting Plaintiff's testimony regarding anxiety in crowded places was misplaced. This error,

however, was harmless for two reasons. First, as discussed, the ALJ relied on other substantial

evidence in the record in determining that Plaintiff's symptom testimony was not fully supported

in light of her reported activities of daily living. *See Batson*, 359 F.3d at 1193, 1196-97 (finding

error is harmless so long as there remains "substantial evidence supporting the ALJ's

conclusions on . . . credibility" and the error "does not negate the validity of the ALJ's ultimate

[credibility] conclusion"). Second, the error was immaterial to the ALJ's ultimate determination

because he incorporated Plaintiff's increased anxiety around groups of people into the RFC—as

evidenced by the ALJ's modification limiting Plaintiff's contact with the public to no more than

a very infrequent basis. *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

      Thus, the ALJ provided two clear and convincing reasons for finding Plaintiff's symptom

testimony not supported by the record. Accordingly, the Court must uphold the ALJ's

determination.

**E. Medical Improvement**

Plaintiff next argues that the ALJ's determination that she medically improved as of January 2012 was not substantiated by the record as a whole. Plaintiff argues that the ALJ "cherry pick[ed]" isolated incidences of improved functioning to support a denial of benefits. ECF 23 at 3. Plaintiff concedes that she has experienced some medical improvement since the CPD. Plaintiff argues, however, that her anxiety and panic have not improved enough for her to successfully return to work. In response, the Commissioner argues this Court should uphold the ALJ's finding of medical improvement because it is a rational interpretation of the evidence supported by inferences reasonably drawn from the record. *See Molina*, 674 F.3d at 1111.

In order to find medical improvement has occurred, an ALJ must compare the claimant's current medical condition with that of her most recent favorable disability decision. As the Ninth Circuit explained in a recent decision:

> A Social Security disability benefits claimant is no longer entitled to benefits when substantial evidence demonstrates (1) "there has been any medical improvement in the [claimant's] impairment" and (2) the claimant "is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1). To determine whether there has been medical improvement, an administrative law judge (ALJ) must "compare the current medical severity" of the claimant's impairment to the medical severity of the impairment "at the time of the most recent favorable medical decision that [the claimant] w[as] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(7).

*Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016).

The ALJ noted that at the time of the CPD, Plaintiff met the requirements for Listings 12.04 and 12.06. AR 26, 103-04. She was unable to leave her home, neglected her personal hygiene, had no energy, and was severely depressed. AR 26, 102. Based on a fair reading of the record as a whole, the ALJ found that, although Plaintiff still faces some limitations, her impairments have improved enough to permit her to return to work.

PAGE 28 – OPINION AND ORDER

In deciding that medical improvement occurred, the ALJ noted how Plaintiff's anxiety and depression have steadily improved following the CPD. Plaintiff's treating physicians have largely reported that her mood has stabilized over the years since the CPD, and her mental impairments have responded well to medication and therapy. AR 687, 721, 822, 857-58. As discussed earlier, Plaintiff has also been able to leave her home to attend her appointments, including group therapy and bariatric support group sessions; take her daughter job hunting; attend open swim at the YMCA; go on vacation; and take her scooter out for extended rides—amongst other things. AR 683, 698, 717, 764, 774, 921. Furthermore, at the time of her CPD, Plaintiff was having difficulties showering and keeping up with her personal hygiene. AR 102. Since that time, Plaintiff's treating sources have consistently noted that she has arrived to her appointments appropriately dressed and well groomed. AR 673, 687, 854, 883.

The ALJ also detailed the everyday difficulties Plaintiff continues to face despite her noticeable improvements. For example, the ALJ took into consideration that Plaintiff reported difficulty leaving the house, but further noted that Plaintiff stated that after she does leave her home she feels better. AR 33, 677. As noted, the ALJ recognized that Plaintiff has experienced periods of increased symptoms when confronted with atypical, stressful life events, but she no longer required psychiatric hospitalization or emergency room treatment, as she had in the past. AR 30. Instead, she was able to remain stable with changes in medication and the support of her medical providers and family. AR 771, 815. Additionally, Plaintiff also reported—and the record confirms—that she has not experienced any manic episodes in quite some time. AR 919.

Although this demonstrates medical improvement, Plaintiff asserts that it does not demonstrate improvement to the point that Plaintiff can return to work. Plaintiff argues that contrary to the ALJ's interpretation, the record as a whole indicates that, despite fashioning a

safe, routine home environment surrounded by supportive family members, Plaintiff still lives in

a constant state of anxiety that results in debilitating symptoms whenever her "boat is rocked."

ECF 17 at 18. Essentially, Plaintiff is arguing that the Court should adopt Plaintiff's

interpretation of the medical record. At most, Plaintiff offers a rational interpretation of the

evidence; however, the ALJ's determination is also a rational interpretation based on substantial

evidence found in the record. As such, this Court must uphold the ALJ's finding of medical

improvement related to the ability to work. *See Batson* 359 F.3d at 1193 (stating "if evidence

exists to support more than one rational interpretation, we must defer to the Commissioner's

decision"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (same);

*Andrews*, 53 F.3d at 1039-40 (same). The Court notes, however, that on remand, proper

evaluation of Dr. Carter's report could alter the ALJ's original determination of medical

improvement.

**F.  Age and Time Out of the Workforce**

Plaintiff raises for the first time in her reply brief that contrary to the regulations, the ALJ

failed to take into account her age and time out of the workforce when determining her RFC.

This argument was not, however, properly presented because all issues must be raised in the

initial brief. Accordingly, it will not be considered. *See United States v. Romm,* 455 F.3d 990,

997 (9th Cir. 2006) ("[A]rguments not raised by a party in its opening brief are deemed

waived."); *Cedano–Viera v. Ashcroft,* 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to

consider new issues raised for the first time in a reply brief.").

**G.  The Vocational Hypothetical**

Finally, Plaintiff argues the ALJ erred at step eight of the sequential analysis by

presenting the VE with an inadequate hypothetical that did not take into account all of her

limitations. An ALJ may rely on the testimony of a VE to determine whether a claimant retains

the ability to perform work. *Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2001). "[I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence." *Robbins*, 466 F.3d at 886. "If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value." *Lewis v. Apfel,* 236 F.3d 503, 518 (9th Cir. 2001).

In posing his vocational hypothetical to the VE, the ALJ described an individual who is 49 years old; who has at least a high school education; who has past work experience as a pharmacy technician; and who can perform light work, as defined in 20 C.F.R. § 404.1567(b), including the additional limitations found by the ALJ. In answering the question, the VE gave three examples of jobs existing in the national economy that could be performed by this individual: (1) clerical addresser (DOT 209.587-010); (2) price coding affixer (DOT 920.587-014); and (3) hand bander (DOT 902.687-026).

The ALJ's hypothetical included all of the limitations he found supported by substantial evidence found in the record. There was no error committed in this regard. Given the uncertainty of how Dr. Carter's report will be weighed in the proceedings on remand, however, the ALJ's original RFC finding may change. If reconsideration of Dr. Carter's report results in a different RFC determination—and the analysis continues to step eight—the taking of new testimony from a VE on the matter will be necessary.

## H.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A remand for an award of benefits is appropriate when no useful

purpose would be served by further administrative proceedings or when the record has been fully

developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A

court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence

that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act.

*Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court.

*Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for

the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal
> error, such as failing to provide legally sufficient reasons for
> rejecting evidence. If the court finds such an error, it must next
> review the record as a whole and determine whether it is fully
> developed, is free from conflicts and ambiguities, and all essential
> factual matters have been resolved. In conducting this review, the
> district court must consider whether there are inconsistencies
> between the claimant's testimony and the medical evidence in the
> record, or whether the government has pointed to evidence in the
> record that the ALJ overlooked and explained how that evidence
> casts into serious doubt the claimant's claim to be disabled. Unless
> the district court concludes that further administrative proceedings
> would serve no useful purpose, it may not remand with a direction
> to provide benefits.
>
> If the district court does determine that the record has been fully
> developed and there are no outstanding issues left to be resolved,
> the district court must next consider whether the ALJ would be
> required to find the claimant disabled on remand if the improperly
> discredited evidence were credited as true. Said otherwise, the
> district court must consider the testimony or opinion that the ALJ
> improperly rejected, in the context of the otherwise undisputed
> record, and determine whether the ALJ would necessarily have to
> conclude that the claimant were disabled if that testimony or
> opinion were deemed true. If so, the district court may exercise its
> discretion to remand the case for an award of benefits. A district
> court is generally not required to exercise such discretion,
> however. District courts retain flexibility in determining the

> appropriate remedy and a reviewing court is not required to credit
> claimants' allegations regarding the extent of their impairments as
> true merely because the ALJ made a legal error in discrediting
> their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting the psychological evaluations contained in Dr. Carter's report. The Court, however, finds that there are remaining conflicts and ambiguities that need be resolved. Specifically, how Dr. Carter's opinions should be weighed against the other medical evidence in the record and the record as a whole needs to be considered. Thus, remanding for further proceedings consistent with this opinion is more appropriate than an award of immediate benefits.

## CONCLUSION

Accordingly, The Commissioner's decision is REVERSED and REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

DATED this 30th day of November, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge